Mark Freeland for the appellate. Your Honors, both of the rulings of the District Court in this case are contrary to the purposes of the Louisiana Public Law Firm. And those purposes, which have been stated a couple of different times by the Louisiana Supreme Court, are to protect those who perform work on public projects, but not to protect the rights of sureties who provide Public Works Act bonds. But isn't the purpose of the formalities of certified mail and all that stuff, the purpose is to make it clear whether notice was provided, as opposed, you're arguing for an actual notice standard, which gets, you know, courts have to have hearings and decide who's telling the truth. So isn't a purpose to have clear, undisputed notice? Yes, Your Honor. The purpose, as the cases say, of the certified notice is to have evidence of the actual notice itself. But the key to the statute is the notice, and what the cases have said. No, but I mean, the reason it doesn't say notice, it could easily say provided there's notice, it says provided notice by certified mail, you know what it says. The reason to have those formalities, rather than just saying notice, is so you don't get into evidentiary disputes about whether there was in fact notice. Certified mail is all, you just attach to, you know, submit to the court the certified mail receipt and that issue is taken care of. That is correct. And that's what the cases say, is that the certified mail is for proof of that notice. Did I answer your question? You can go ahead. I guess the follow-up then is if that's the purpose, you didn't do certified mail, so why do you stay, why does your claim survive? Well, the reason our claim survives, Your Honor, is because this case is a unique case similar to some of the court of appeal cases that we cited in which, by way of background, the parties to this case, my client and the general contractor, F.H. Passion, and it's in the record, were in discussions about this claim. The parties entered into a partial agreement that resulted in my client releasing the first set of sworn statements that my client filed. Then a further dispute arose and my client then reported some additional sworn statements of claim. Both parties represented by counsel at this time. Now, during that time, we filed the second set of sworn statements of claim. Those were emailed to counsel for the general contractor. Time progresses in this suit, and another key point here, Your Honor, is that during the entire suit up until right before the pretrial hearing, the appellees were claiming that we, 84 Lumber, were a joint venture with the first tier subcontractor, which would make this notice not necessary. Right when we did the pretrial inserts, that defense was inserted. All right. But the question, I mean, we've seen those facts. The question, as I see it, is whether we can override the clear statutory language saying you need certified mail notice, and ultimately that's an airy guess, and I know you cite cases saying from lower courts that that's not necessary. Can you point to any Louisiana Supreme Court cases that would say we look to the underlying purpose, and even when it's at odds with plain statutory language? Because it seems to me that's what you're saying we need to do. And I do believe that is what you need to do, and I do believe that if the Louisiana Supreme Court was faced with this issue, the Louisiana Supreme Court would follow those Louisiana appellate court cases, which held that if it's by regular mail and not certified mail, it doesn't matter, as long as there is actual notice. And the reason that I tell you that . . . But weren't all those cases sent to the actual party? Here there's another that was sent to the lawyer, then to the . . . it wasn't sent directly. Those cases were. Those cases were sent directly to the party. But here, there's other evidence of the actual notice itself, because remember that the statute time period is you've got to provide the notice before the expiration of 45 days of the filing of the notice of acceptance. Here, that notice of acceptance was not recorded until two years after, or one and a half to two years after, we filed the suit. We had filed suit. They participated in the suit. They acknowledged the claims in the suit. And then at that point, we didn't send them a certified letter. Now their argument is, and this might be what Your Honor is about to allude to, that does the statute require that notice to be sent before you file the suit? And Your Honor, I don't . . . the statute does not say that. There are no cases that say that. Would it make any sense to allow that to be done after the suit is filed? No, Your Honor. It wouldn't make any sense. And our position is that after the suit is filed, then it would be superfluous to then send a certified letter to the party notifying them of the claim that was already served. So that notice must precede the filing of the suit, right? So the notice does not need to precede the filing of the suit because that's not what the statute says. And Louisiana appellate court cases have held, including the New Light case, which the district court regrettably didn't have the benefit of during this decision, that the actual suit itself can be evidence of the notice of the claim. The Berko case also held that. Well, there is no jurisprudence constant because they're all over the map. You mean the Louisiana appellate court cases? Appellate courts. Your Honor, respectfully, I don't believe that on this issue the appellate court cases are all over the map. To the contrary, the appellate court cases in Louisiana who have looked at this 2247 notice have held that the actual notice is what matters, not whether it was sent by certified mail. And the cases that the appellee cite did not deal with 2247 notices. They dealt with timelines of notices. So what is the point of having a statute that clearly requires what this one does and then just say by courts, oh, we can disregard that? Your Honor, I don't think that it's disregarding it. And the courts actually say that holding that actual notice is all that's required does not disregard the requirements to strictly construe the Public Works Act in order to not expand the claims themselves. Because the certified mail requirement is not what provides the notice. It's the proof of the notice. The notice and the appellees, and I don't disagree with their purpose of the notice, is that when you have a second-tier subcontractor or supplier, the general contractor might not know of those claims. The general contractor needs to be able to withhold payment to protect its rights if there's a claim outstanding. It's the notice itself that gives the general contractor that information, not whether it's sent by certified mail. The certified mail is proof. How about sent to the contractor and not his attorney? I'm sorry, are you going to change the question? This notice was sent to the attorney, not to the party. It was. It was sent to the attorney because the contractor represented by counsel at the time. It was sent to the attorney. So it disregards the statute in two ways. It's not sent to the party. It's not sent by certified mail. That is correct, Your Honor. However, if the statute had not been previously held ambiguous by the Louisiana Supreme Court, and I do believe the statute is ambiguous, especially given the appellee's arguments that it has to be filed before you file suit, but it also has to be provided within 45 days of the notice of acceptance, and also if the Louisiana appellate courts had not held otherwise, then yes, Your Honor, I would agree with you.  It is not the certified mailing that is the important part of this. It's the fact that they did actually know of our claim. That is the purpose of the statute is so that the general contractor knows of our claim. They did know of our claim. The purpose of the statute is to prove that notice was given to the party. That is the certified mailing requirement, yes. And to whom it's sent. Yes, Your Honor. That is the reason for the certified mail requirement. But what I was referencing was the notice, the requirement for the notice itself. But I don't disagree with your position on the reason for that certified mail requirement is proof of the fact that they received the notice. Well, the overarching all of that in the civil law jurisdiction is the attention paid to the wording of the code, the Constitution, and the statute. Yes, Your Honor. I understand that. But that's why I mentioned that the statute is ambiguous when it references the time period in which that notice needs to be provided. Also, there— But that's not an issue here. Pardon me? The timing is not an issue in this case. The timing is not an issue in this case because the notices were given, not by certified mail, but notice was provided through these various—the suit, the email, all before that 45-day period. There's also evidence in the record that they bonded off these claims. Now, their position is that it doesn't matter that we knew about the claims. Actually, their position is that it's not their burden to demonstrate that they didn't have actual notice, and we disagree with that because that's their burden to prove that they didn't have actual notice. If this Court agrees that actual notice is what is required. Now, let me make sure I'm following that. Yes, Your Honor. If the statute provides for certified mail and whatever else it provides, in order to have a definite matter of proof whenever this comes up or where the notice was given, sending it incorrectly also makes it their burden? I'm not following that. The reason that I say that's their burden is because if this Court finds that— if this Court finds that if it doesn't go by certified mail, it doesn't matter whether they have actual notice, then no. Then I think that's the end of the inquiry. I do believe so, yes. If this Court agrees with what our position is, that it is actual notice, that's what matters, then that's the point where I'm saying it is their burden, as an affirmative defense of lack of a suspensive condition of notice, to say that they didn't receive it. They've been—the appellees have been very careful in all of their pleadings so far to avoid saying whether they did actually receive notice of this claim before we filed suit. They have said they don't concede it, but that's not the same as disputing it. And, Your Honor, the cases have said that the burden goes to the party proving the actual notice when the other party disputes receiving the actual notice. They haven't disputed it here. They've just said that they don't concede it. Well, doesn't—isn't it up not to the parties or this Court, but the Louisiana legislature? I mean, they've passed a statute that says certified notice to the owner. If they're going to let it go to a lawyer or other than that, but actual notice, doesn't the statute have to be amended? To change the language of the statute, yes. And I am not going to tell this Court that the statute doesn't say what the statute says. I'll concede that. But the interpretation of that statute by all of the Louisiana Supreme Court— Louisiana Court of Appeals, who have looked at it, have not looked at that certified mail requirement as the key thing. It's whether or not they had actual notice of the claim itself by that 45-day— the expiration of that 45-day period. So that's the point that the courts of appeal have all addressed here. All right, counsel. Thank you. You'll have time for rebuttal. Pardon? You'll have time for rebuttal. You'll have time for rebuttal. May it please the Court, Justin Torres for the appellees. The Louisiana legislature has been admirably clear about what is required if you are a subcontractor and you want to bring suit against a general contractor in a case where there's no privity of contract between those parties. 2247 lays it out very specifically and very explicitly. And the Louisiana Supreme Court and almost all of the Louisiana appellate courts have held that because that statute, the Louisiana Public Works Act statute, is in derogation of the common right of contract, that it has to be construed strictly against the claimant. It's undisputed in this case that 84 Lumber did not comply with the statute. And so on that basis alone, this court could affirm the district court's opinion. Counsel, let me set out what both sides know. The facts of this case are clear. It wasn't certified mail. The statute says what it says. So we're dealing with is there any flexibility in the statute. Among the cases the other side wants us to consider is Bob McGaughy, Lumber Sales, other cases as well. Are there cases from the intermediate courts of Louisiana that give some support, would you concede, some support to the argument that the failure to give certified mail is not fatal? Your Honor, I think that there are cases that have excused some minor technical noncompliance, right? But there are no cases from the Louisiana courts that excuse this kind of total default. Okay, so let me just start. There are the cases that say, again, they may not be the cases we ought to follow, which I certainly think is your position. But are the cases that say if the mail is not certified but it is received and that is proven, that's good enough? There are cases. The Gilchrist case, for example, was a case where everything was done correctly in terms of the scope of the statement that was provided. It was sent to the Louisiana office, but it was sent by regular mail and not certified mail. In that case, the court excused that particular aspect of noncompliance. But also in that case, there was no dispute. The parties had agreed that the general contractor had agreed, yes, I received the notice. So you seem to be – I don't want to cut to the end game too fast. Are you saying that so long as it's undisputed in the case that notice is received, 2247 is sort of a nonissue? No, Your Honor. We're not saying that at all. In fact, there are a substantial number of cases that are cited in the district court's opinion that are cited in our brief where Louisiana appellate courts have held parties to strict compliance with 2247, many of them on the timeliness issue but also on other – the mailing and the notification issues as well. So there's not, as Judge Weiner pointed out, there's not jurisprudence constante in this case, right? There are some outlier cases. I'll have to ask Judge Weiner what that means, but I guess not. There are some outlier cases. But that – I mean, what is required – When you say outlier, though, it does seem most of the cases that have addressed specifically this mailing requirement seem to go their way. Which ones would you say go your way that focus particularly on the mailing issue? Well, I believe there's a case called Interstate School Supply, which is cited in the district court's order in our brief that specifically focuses on the mailing requirement as opposed to the timeliness issue. But again, I mean, the point is that – and this court's charge is to look at the plain text of the statute using Louisiana's civilian – And on that, I mean, the text says what it says, as we emphasized to opposing counsel. But I guess with these cases from the intermediate courts, I understand you're saying, okay, well, they said regular mail is okay, even if it's not certified. And you're saying this is further from what the statute requires. But it seems to me the problem is once they say, we're going to excuse the certified requirement. I mean, they are – you're outside this plain language of the statute at that point. And then it seems to be your standard is, well, what degree of departure from the statute is required. But there you are, it seems to me, once you get away from the plain language, you're in a world of did they actually get notice. Sure. Well, I mean, to be clear, our position is not that any of those cases should have come out that way. Our position is that the statute says what it says, and the Louisiana Constitution says that shall means shall. It means mandatory. Well, I forget the name of that case. It seems like Erie comes to mind. And we're supposed to get a handle as best we can on what Louisiana would do with this. I will certainly say that my understanding of Louisiana law is that it's a hierarchy. And you start with not case law, but you start with statutes and the Constitution and the Holy Bible or whatever else comes above that. But you don't get to case law until after all of that. Nonetheless, there are Louisiana judges who are not doing that on 2247. I'm sure you don't want us to certify this. You just want to win. But isn't this a pretty good candidate for certifying to the Supreme Court of Louisiana? Well, I don't think so, Your Honor. I mean, for two reasons, right? This court has said that it certifies in a case where there's a substantial public policy issue and there is substantial cause for dispute about the outcome. Our contention is that there's no substantial cause for dispute here. The statute says what it says, and the code says what it says, and it's mandatory. But that really does mean that all these intermediate court cases that cut some slack are wrong. And that's a bit much for us to be saying. Well, I actually—I would push back on that, Your Honor, and say that this court is sitting in a diversity posture. It's charged under Eries to give effect and to do what the Louisiana Supreme Court would do. It strikes me that it's a far more substantial departure and a far more substantial innovation in Louisiana law to suggest that a mandatory shall statute, statutory requirement, can be excused than it is to say that we're going to follow the language of the statute. And if this comes up again in the Louisiana state courts, the Louisiana Supreme Court can decide it wants to do something different. But this court in Erie, sitting in diversity, doesn't have the power to— or has to be very wary of substantial innovations in state law because there are federalism concerns there that are very powerful. But that is exactly what makes us put on a Louisiana hat when we do this. Judge Rubin said in his article years ago about a trip on or a ride on the Erie Railroad that we don't do stare decisis in the common law manner. We do it in the jurisprudential constant, which ignores intermediate appellate decisions. That's correct, Judge Winter. It ignores, in the jurisprudence constant methodology, the intermediate appellate courts. You don't look to them first, and even at all, if the plain text of the statute is clear and doesn't lead to an absurd decision. Well, here we have—correct me if I'm wrong—but intermediate courts going both ways. That's correct. That's correct. Courts have gone both ways on whether they're going to strictly construe the statute or not. The counsel didn't address the second part of the argument about the release bond, and I'll just talk about that very briefly. The statute is set up so that when a subcontractor sues a general contractor, that essentially freezes the unexpended funds that the public entity is holding, and if the public entity at that point disperses any funds, then it takes the liability itself. You can imagine how often that happens, not often at all. So the statute provides an opportunity for any interested party, not even parties to the suit, but even subs to subs who are looking to get paid at some point, to put up a bond and that permits the public entity to pay the undisputed amounts in the case. That bond does not create a new cause of action, and when you look at Section 2242, there's absolutely no support in that section, in that statutory provision, that there's a new cause of action here or a new claim. Courts have looked at the Louisiana Private Works Act, which has a substantively identical release bond provision, and have said that it doesn't enlarge. The Louisiana Supreme Court has said it doesn't create a new claim or a new cause of action. It just opens up the funding so that it can flow through to subcontractors. So there's no new claim that's created there, no new cause of action. The right to sue is still predicated on complying with 2247, which wasn't done here. If the panel has no more questions for me, I will yield back my time. Thank you. Thank you, Your Honors. First, on the statutory bond claim and the cases themselves, the interstate schools case did not deal with 2247. The interstate schools case dealt with 2242F, which was a statute, and still is a statute, that concerns material suppliers and what they need to provide in order to give notice of their claim. And it also dealt with, I believe, 2242, in that they didn't give their notice to the owner under 2242, so that they didn't meet that timeliness aspect. Now, the reason I mention that is because the Magee case that we've cited says it was a different circuit, so they didn't have to follow it. But they also said that that interstate schools case didn't follow the requirements of the Public Works Act, which is to protect those who are providing materials on the project. Now, moving to the release bond claims. The release bond here, there are two avenues under the Public Works Act. One is the statutory bond that the general contractor provides at the beginning of the project. The second is a privilege on the owner's funds that the owner is withholding from that contractor. 2247 deals with the claim on the statutory bond that's provided in the beginning of the project. If the owner releases retainage to the contractor before getting a release bond from the contractor to secure that privilege on those funds, the owner can be personally liable. The release bond secures the privilege on the owner's unexpended funds. It's not bonding off a bond claim. It secures that separate privilege. The cases under the Private Works Act are completely distinguishable because under the Private Works Act, the owner, you have a claim against the owner and a claim against the contractor. The claim against the owner is secured by a privilege on the owner's property. In order to secure and enforce that claim, you have to file suit within the owner within a certain amount of time. If the contractor bonds off or the owner bonds off that claim, that privilege, then that bond is in place of that owner claim. Well, if you don't, in the case that they cite, they didn't file suit in time that they would have had to go against the owner. Therefore, the court said, well, the bond is only as good as the claim against the owner. That's not here because this statute is not related to the claim against the release bond. In other words, this statute doesn't relate to the claim against the owner, and therefore the release bond, which replaces the claim against the owner, the statute doesn't relate to the release bond either. So even if, and we contend that the court was wrong in the motion for summary judgment, that ruling has nothing to do with the release bond claim because 2247 does not require any notices in order to recover on that release bond because it doesn't require any notices in order to recover against the owner. Any questions, Your Honor? No. Okay. Appreciate the clarification. Thank you. He gave you, he opened the door for you. Otherwise, you couldn't have covered that. Pardon me? He opened the door for you by discussing the bond. Otherwise, you couldn't have covered it. Thank you both for bringing this case to us. That is the last case of the day. Tomorrow's docket will be in the morning at 9 a.m.